IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ABM SERVICE CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>P. CHASE POLLY and )<br>FIRST CHOICE INS. & )<br>FIN. SERVICES, LLC, )<br>)<br>Defendants. ) | No. 23-cv-3063 |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on the Motion to Dismiss filed by Defendants P. Chase Polly and First Choice Insurance and Financial Services.  See Defs.' Mot. Dism., d/e 10.  For the reasons below, Defendants' motion is DENIED.

## I. BACKGROUND

The Court construes the Complaint in the light most favorable to Plaintiff ABM Service Corp. ("Horace Mann"), accepting all well-pleaded allegations as true and drawing all reasonable inferences in ABM's favor.  Alicea-Hernandez v. Cath. Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).

ABM is a wholly owned subsidiary of Horace Mann Educators Corporation, a "niche" insurance and financial services provider founded and based in Springfield.[1] See Compl., d/e 1, ¶¶ 9–10. Horace Mann primarily sells its insurance and financial services products through independent contractors called "Exclusive Agents," under an "Exclusive Agent Agreement" entered with each Exclusive Agent. Id. ¶¶ 11, 14. Under this agreement, Exclusive Agents receive "resources, training, advance payments, regulatory compliance help[,] and a marketing platform to help develop and maintain" relationships with current and prospective clients. See id. ¶¶ 12–13. In exchange, Horace Mann receives from their Exclusive Agents guarantees of confidentiality, exclusivity, and noncompetition. See id. ¶¶ 14–15.

Defendant P. Chase Polly and Horace Mann entered an Exclusive Agent Agreement in December 2015. For the next seven or so years, Mr. Polly—acting through his independent insurance agency, Defendant First Choice—sold Horace Mann products

---

[1] ABM operates under the guise of Horace Mann, its corporate parent, and refers to itself as "Horace Mann" throughout the pleadings. The Court does the same here.

throughout south-central Pennsylvania. According to Horace Mann, Mr. Polly and First Choice "received significant compensation" from this arrangement. Id. ¶ 21.

On November 9, 2022, Mr. Polly and First Choice advised Horace Mann of their intent to terminate the Exclusive Agent Agreement. The parties terminated the agreement on December 12. "Upon termination of the Exclusive Agent Agreement, Horace Mann reminded" Mr. Polly and First Choice "of their continuing obligations" under the agreement, including the non-solicitation, non-competition, and remedial provisions contained in it. Id. ¶ 24. Section 17 of the Exclusive Agent Agreement (captioned "Obligations Upon Termination of Agreement") provided that:

> You [the Exclusive Agent] will immediately and completely return all property including but not limited to documents, hardware and software including any originals, copies, duplicates or facsimiles, belonging to Horace Mann, or dispose of such property in such manner as the Company specifies.
>
> You will immediately cease to use such telephone numbers referenced in Section 5. You will be responsible for all charges incurred through the termination date.
>
> For a period of twelve (12) months following termination, for any reason, You agree You will

> not solicit the purchase of products or services in competition with those sold by Horace Mann:
>
> 1. With respect to any person, company or organization to whom You or anyone acting on Your behalf sold insurance or other products or services on behalf of Horace Mann or an authorized third-party vendor and who is a customer of Horace Mann or an authorized third-party vendor at the time of Your termination,
>
> 2. With respect to any person, company or organization who is a customer of Horace Mann or an authorized third-party vendor at the time of termination of this Agreement and whose identity was discovered by You as a result of Your status as an EA [Exclusive Agent] or as a result of Your access to Confidential Information from any office or business site located within ten miles of any locations from which You solicited or sold Horace Mann or authorized third-party vendors' products or services during the year immediately preceding termination of this Agreement.

Id. ¶ 25 (quoting Compl. ex. A., d/e 1-1, at 11–12).  After terminating the Exclusive Agent Agreement, Mr. Polly and First Choice entered a similar agreement with Lincoln Investment, one of Horace Mann's competitors.

Horace Mann filed this action on March 20, 2023.  The Complaint alleges that Mr. Polly and First Choice have "contacted

and solicited Horace Mann clients while acting as agents of Lincoln Investment." Id. ¶ 29.  The Complaint further alleges that:

- Polly contacted a current Horace Mann client via telephone on January 30, 2023, and spoke with the client about moving the client's investments to Lincoln Investment. Polly told the client that Defendants were with a new company and were no longer with Horace Mann.  Polly then requested rollover paperwork for the client in case the client decided to move funds to Lincoln Investment.

- Additionally, on February 26, 2023, Polly drafted an email directing a current Horace Mann Client to move the client's investments to another firm.  Specifically, Polly stated "Send this email with the info below.  They'll send you a form that I'll take care of."

- On March 14, 2023, Polly sent an email in which it appeared he was facilitating the withdrawal and transfer of another Horace Mann client account in order to move the client's investments to another firm.

- On February 6, 2023, Polly requested that Horace Mann Agent Jeff Koons send him an allocation form.  Upon information and belief, Polly moved money to a fixed account so that he could transfer a Horace Mann client's assets to another firm.

Id. ¶¶ 30–33.  The Complaint also alleges, upon information and belief, that Mr. Polly "is facilitating and coordinating the transfer of [other] Horace Mann client accounts to another firm," and that Mr.

Polly and First Choice "have retained and are using Horace Mann's confidential Information and trade secrets." Id. ¶¶ 34–35. The two-count Complaint alleges that Mr. Polly and First Choice are liable for state-law breach of contract (Count I) and tortious interference with economic advantage (Count II). Horace Mann seeks damages and injunctive relief on both counts.

Mr. Polly and First Choice now move to dismiss Horace Mann's complaint for failure to state a claim. See Defs.' Mot. Dism., d/e 10 (citing Fed. R. Civ. P. 12(b)(6)). They argue, among other things, that Horace Mann's allegations and evidence of wrongdoing are "equally indicative of legal contact," represent "plucked tidbits from Mr. Polly's ongoing client relationships," or are "pleaded allegations without factual support." Id. at 4.

## II. JURISDICTION AND VENUE

Horace Mann brought this action under Illinois law. From the face of the Complaint, there is complete diversity between the parties and the amount in controversy exceeds $75,000. This Court, therefore, has subject-matter jurisdiction over Horace Mann's claims. See 28 U.S.C. § 1332. Venue is proper because the parties consented to this Court's personal jurisdiction and agreed

that Illinois law governed their agreement.  See Compl., d/e 1, ¶ 5; see also 28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cty. of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

In considering a motion to dismiss under Rule 12(b)(6), this Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and drawing all reasonable inferences in the plaintiff's favor.  Id.  But the complaint still must set forth facts that plausibly demonstrate a claim for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).  A plausible claim alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Reciting the elements of a cause of action or supporting claims with conclusory statements are not enough to state a claim.  Id.

## IV. ANALYSIS

**A.   The Court Declines to Consider Defendants' Extrinsic Evidence.**

Defendants offer two sworn statements in support of their motion to dismiss.  See Defs.' Mot. Dism., d/e 10, at 5.  Defendants contend that the Court can consider this "extrinsic evidence without converting the motion into one for summary judgment because it is critical to the complaint and the episode is referred to in it." Id. at 8 n.4 (citing Bolyard v. Fulscher, No. 19-cv-3146, 2020 WL 6928606, at *2 (C.D. Ill. Nov. 23, 2020)).

"At the dismissal stage, the court is typically confined to the pleadings alone." Yassan v. J.P. Morgan Chase & Co., 708 F.3d 963, 975 (7th Cir. 2013).  Even so, it is also "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002) (cleaned up). This principle carves out a "narrow exception to the general rule that when additional evidence is attached a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for

summary judgment under Rule 56 . . . . or exclude the documents attached to the motion to dismiss and continue under Rule 12." Id. (citing Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).

Defendants' sworn statements do not fit within this "narrow exception" to Rule 12(b)(6). While the exception is "aimed at cases interpreting, for example, a contract," the exception's purpose is to discourage plaintiffs from engaging in artful or deceptive pleading—for instance, by suing for breach of contract without making available the contract at issue. Levenstein, 164 F.3d at 347; Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so."). Here, Horace Mann appended the Exclusive Agent Agreement as the sole exhibit to its Complaint. The agreement "constitute[s] the core of the parties' contractual relationship" and is therefore central to Horace Mann's claims. See Venture Assocs., 987 F.2d at 431–32. Defendants' extrinsic evidence serves neither function; instead, it is offered to contradict Horace Mann's claims. Whether that evidence succeeds in doing so is a question best

addressed at summary judgment or trial. For now, the Court will exercise its discretion to exclude Defendants' exhibits and consider only the pleadings and evidence properly before the Court.

**B.    The Complaint States a Claim for Relief.**

The Court turns next to the substance of Defendants' motion to dismiss. Horace Mann's first claim is that Defendants breached, and continue to breach, the Exclusive Agent Agreement. Specifically, Count I alleges that Defendants have "contacted and solicited Horace Mann clients while acting as agents of Lincoln Investment," and that Defendants have "retained and are using Horace Mann's Confidential information and trade secrets," all in breach of Section 17 of the Exclusive Agent Agreement. Compl., d/e 1, ¶¶ 34–35. To survive Defendants' motion to dismiss, Horace Mann must sufficiently allege (1) that the Exclusive Agent Agreement is valid and enforceable, (2) that Horace Mann substantially performed its contractual duties, (3) that Defendants breached the contract, and (4) that Horace Mann suffered damages as a result. Priebe v. Autobarn Ltd., 240 F.3d 584, 587 (7th Cir. 2001) (citing Hickox v. Bell, 552 N.E.2d 1133, 1143 (Ill. 1990)).

Defendants argue that Count I "pleads facts 'merely consistent with' liability and therefore fails to cross the line from 'possibility' to 'plausibility.'" Defs.' Mot. Dism., d/e 10, at 6 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Defendants say that because Horace Mann's allegations of client-poaching "are equally explained by permissible, legal contacts," Count I cannot "plausibly allege illegal solicitation of former Horace Mann clients."[2]  Id.  And Defendants further argue that Horace Mann's "allegation involving the purported misuse of its confidential information" is a "textbook 'naked assertion' and conclusory allegation that is 'not entitled to be assumed true.'"  Id. at 11 (quoting Twombly, 550 U.S. at 570).

The Court disagrees.  Horace Mann alleges—and Defendants fully concede—that Defendants have transacted with former Horace Mann clients since terminating the Exclusive Agent Agreement. Whereas Horace Mann alleges that these transactions arose out of a breach of the Exclusive Agent Agreement, Defendants contend that

---

[2] Defendants also contend that Horace Mann's allegations "do not suggest illegal solicitation upon closer scrutiny," given the assertions made in Mr. Polly's sworn statement and the sworn statement of one of his clients.  Defs.' Mot. Dism., d/e 10, at 7–9. Like those declarations, however, this argument is inapposite at the pleadings stage.

they are "equally indicative of legal conduct as of illegal conduct." Id. at 11. Yet Defendants' interpretation of the underlying events is immaterial. At the pleadings stage, the Court must assume the truth of the plaintiff's well-pleaded allegations. Horace Mann's allegations in Count I are more than adequately specific; they also state a claim for breach of contract. Defendants' motion to dismiss Count I is denied.

The Court reaches the same conclusion on Count II, which alleges that Defendants are liable for tortious interference with prospective economic advantage. To state such a claim, Horace Mann must sufficiently allege (1) that it had a reasonable expectation of a valid business relationship with a third party; (2) that Defendants knew of that expectation; (3) that Defendants intentionally interfered with that expectation and prevented it from ripening into a valid business relationship; and (4) that Defendants' actions resulted in damages. Schuler v. Abbott Labs., 639 N.E.2d 144, 147 (Ill. 1993). Further, Horace Mann must identify the third party at which it had aimed its business efforts. Id.

As with Count I, the gist of Defendants' motion to dismiss Count II is that Horace Mann's allegations are "equally indicative of

legal conduct as of illegal conduct." Defs.' Mot. Dism., d/e 10, at 11. Defendants argue, moreover, that it is "not indicative of tortious interference for Mr. Polly to have contacts with clients that facilitate the transfer of their accounts at the clients' request." Id. But as with Count I, Defendants' contentions are procedurally premature. Horace Mann's allegations are well-pleaded. They identify the pertinent contractual provisions, the clients allegedly targeted by Defendants' post-termination efforts, and the potential scope of Horace Mann's resultant losses. All this states a claim for tortious interference—one that Defendants will, with the benefit of full discovery and dispositive-motion practice, be free to rebut in the future. Their motion to dismiss Count II is denied.

## V. CONCLUSION

For these reasons, Defendants' Motion to Dismiss (d/e 10) is DENIED.

**IT IS SO ORDERED.**

**ENTERED: JULY 7, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**